**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILL IBRAHIM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:07-CV-02295 RMC** |
| **UNISYS CORPORATION,** | |
| **Defendant.** | |

## DEFENDANT UNISYS CORPORATION'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant Unisys Corporation, by and through its undersigned counsel of record, moves to dismiss the Complaint in its entirety for lack of jurisdiction and/or for failure to state a claim. In support thereof, Defendant submits its accompanying Memorandum in Support of Defendant Unisys Corporation's Motion to Dismiss.

WHEREFORE, Defendant respectfully requests that its motion be granted and that the Complaint be dismissed in its entirety, with prejudice. A proposed Order is attached.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.


_____/s/ Brian Steinbach_____
Frank C. Morris, Jr.
Bar No. 211482
Brian Steinbach
Bar No. 256727
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900

Attorneys for Defendant Unisys Corporation

DATED:  March 4, 2008

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Defendant Unisys Corporation's Motion to Dismiss was served on the 4th day of March, 2008 via electronic delivery upon the following:

John E. Carpenter, Esq.
910 17th Street, N.W. Suite 800
Washington, D.C. 20006

Counsel for Plaintiff


        /s/ Brian Steinbach
Brian Steinbach

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILL IBRAHIM,** | |
| **Plaintiff,** | |
| *v.* | **Case No. 1:07-CV-02295 RMC** |
| **UNISYS CORPORATION,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT UNISYS CORPORATION'S MOTION TO DISMISS**

Defendant Unisys Corporation ("Unisys") submits this Memorandum in support of its Fed. R. Civ. P. 12(b)(1) and (6) motion to dismiss all three Counts of the Complaint. As discussed below: (1) the claims of Plaintiff Bill Ibrahim ("Plaintiff" or "Mr. Ibrahim") in Count II under the District of Columbia Human Rights Act, D.C. Code §1-1401, et seq. ("DCHRA"), must be dismissed for lack of subject matter jurisdiction because they are barred by the applicable one-year statute of limitations or, in the alternative, because of his prior election of remedies; (2) Plaintiff's claims in Count I for hostile work environment/harassment and non-promotion under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., ("Title VII") must be dismissed for lack of subject matter jurisdiction due to his failure to file a timely charge; (3) in the alternative, Plaintiff's claims in Counts I and II for religious and national origin discrimination must be dismissed for failure to state a claim; and (4) Plaintiff's claims in Count III for retaliation for engaging in protected activity, whether under Title VII or the DCHRA, must be dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

## I.   BACKGROUND

### A.  ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that he is a Muslim originally from Somalia but a citizen of the United States since 1996. (Complaint ¶6.) He began work with Unisys in September 2002 and resigned on October 21, 2005. (*Id.* ¶¶6 and 18.) He contends that he was a team leader in the corporate information systems department (*Id.* ¶6), and serviced various Unisys clients throughout the metropolitan area. (*Id.* ¶9.) He also alleges that at all times his direct supervisor was Paul Testa, and that Mr. Testa "had disdain" for Plaintiff because he originally was from Somalia, is a Muslim and possesses dark skin. (*Id.* ¶¶8 and 16.)

According to Plaintiff, he was subjected to a hostile work environment created and sustained by Mr. Testa. (*Id.* ¶10.) Specifically, he asserts that in July 2003 Mr. Testa informed him that he was not going anywhere in the company, a statement that had no basis other than Mr. Testa's alleged dislike for Plaintiff (*Id.* ¶10); that in December 2003 Mr. Testa "referred to the incident in Somalia in the early 1990's involving U.S. servicemen and further stated in Mr. Ibrahim's presence that all Somalis should be hung" (*Id.* ¶11); and that in 2004 he was demoted from his alleged position as a team leader without explanation or justification. (*Id.* ¶12.)

Plaintiff further asserts that he performed his job well and received various commendations from clients. (*Id.* ¶13.) He alleges that he was not promoted despite being qualified for many positions. (*Id.* ¶14.) In particular, he asserts that he applied for one of sixteen identical positions on October 27, 2004 but white candidates were selected even though he allegedly was the best-qualified candidate; and that he applied

for one of three identical positions on June 17, 2005, but white candidates with less qualifications allegedly were selected. (*Id.* ¶14.)

Plaintiff further asserts that in November 2004 Mr. Testa recommended that Plaintiff be terminated and again asserted that Plaintiff was "not going anywhere in the company." (*Id.* ¶15.) According to Plaintiff, Mr. Testa continued to maintain a hostile work environment for Plaintiff by "routinely" (but on unspecified dates) rejecting time sheets without justification; rejecting training vouchers and denying a training opportunity; rejecting expense vouchers without justification and refusing to pay expenses incurred; denying vacation requests without justification; refusing to sign "clearance sheets," which allegedly denied an advancement opportunity; calling Plaintiff names such as "nigger" and "boy;" and stating that if Plaintiff called the Human Resources department, nothing would happen, or "at one point," stating "I will hang you." (*Id.* ¶17.)

According to Plaintiff, notwithstanding Mr. Testa's alleged statement, he nonetheless contacted the Human Resources department in late 2004; "informed it of the manner in which Mr. Testa was treating him," and thereafter continued to communicate with Human Resources concerning this issue throughout 2005. (*Id.* ¶18.) He alleges that Unisys neither took nor recommended any corrective action. (*Id.* ¶18.) Plaintiff further alleges that he resigned on or about October 21, 2005, and "in effect" was constructively discharged at that time, but fails to allege any incident provoking his resignation. (*Id.* ¶18.)

Plaintiff filed his lawsuit on December 20, 2007. (Docket #1.) In Count I, Plaintiff asserts that he "was subjected to a hostile work environment, not promoted and was

otherwise unlawfully harassed in the workplace due to his country of national origin, race and/or religion," in violation of Title VII. (*Id.* ¶20.) He also asserts that the alleged failure to investigate his complaint and take corrective action violated Title VII. (*Id.* ¶21.)

In Count II, Plaintiff asserts that he "was subjected to a hostile work environment and was otherwise unlawfully harassed in the workplace due to his country of national origin, race and/or religion," in violation of the DCHRA. (*Id.* ¶22.) He also asserts that the alleged failure to investigate his complaint and take corrective action violated the DCHRA. (*Id.* ¶23.)

Finally, in Count III, Plaintiff asserts that Unisys retaliated against him for engaging in protected activity "and allowed the unlawful conduct to continue abated." (*Id.* ¶24.) He does not indicate whether this claim is founded on Title VII or the DCHRA.

## B.  ADDITIONAL FACTS REGARDING PLAINTIFF'S CHARGE FILING

On June 9, 2006, Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a "Charge Questionnaire" purportedly signed by him on June 6, 2006. (Declaration of John P. Monaghan ("Monaghan Dec."), attached as Ex. 1, ¶¶4-5 and Exhibits B and C.) In the space designated for stating the action believed to be discriminatory, he wrote "see attached." (*Id.*) The attachment apparently was a five-page "Charge of Discrimination" prepared by his attorney in the form of a pleading and signed by both his attorney and him, also filed with the EEOC on June 9, 2006. (Monaghan Dec. ¶¶ 3, 6 and 7 and Exhibit A.) Notably, this document alleged violations of both Title VII and the DCHRA.

At the time, the EEOC and the District of Columbia Office of Human Rights ("DCOHR") had in place a work sharing agreement, pursuant to which a charge filed with one agency was considered dual filed with the other, but the receiving party

processed any charge it initially received. (Declaration of Brian Steinbach ("Steinbach Dec."), attached as Ex. 2, ¶¶3 and 5 and Exhibits B and D.)[1] Pursuant to the work sharing agreement, the EEOC on June 22, 2006 notified the DCOHR of Plaintiff's complaint. (Steinbach Dec., ¶¶3-4 and Exhibits B and C). The DCOHR declined to assert jurisdiction over Plaintiff's complaint, instead deferring its jurisdiction to the EEOC to investigate, as called for by the work sharing agreement and indicated on the EEOC transmittal form. (Steinbach Dec., ¶¶3-5 and Exhibits B, C and D.)

On September 25, 2007, the EEOC completed its investigation and issued a "no probable cause" determination. (Monaghan Dec. ¶8 and Exhibit D.) The disposition letter made it clear that the EEOC's decision was a decision on the merits, stating "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statute." (Monaghan Dec., Exhibit D.) Plaintiff then initiated the instant action on December 20, 2007.

## II.   STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(1) and (b)(6)

A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction "goes to the power of the court to hear and decide the case." 5B Wright and Miller, *Fed. Prac. & Proc. Civ. 3d* §1350 at 128 (2004). The Plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. *Coles v. Harvey*, 471 F. Supp. 2d 46, 49 (D.D.C. 2007 (Collyer, J.). Furthermore:

> Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v.*

---

[1] This Court may take judicial notice of the D.C. work sharing agreement. *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 569 n. 14 (D.C. 2007).

> *United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

*Coles v. Harvey*, 471 F. Supp. 2d at 49. Consequently, the Court need not limit itself to the allegations of the Complaint in deciding Unisys's 12(b)(1) motion. *See Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); *Coles v. Harvey*, 417 F. Supp. 2d at 49. Rather, "the court may consider the complaint supplemented by undisputed facts evidenced in the record . . . plus the court's resolution of disputed facts." *Herbert v. National Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

In ruling on a motion under Rule 12(b)(6) to dismiss for failure to state a claim, the Court must treat the complaint's factual allegations, including mixed questions of fact and law, as true, drawing all reasonable inferences in favor of the Plaintiff. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F. 3d 156, 165 (D.C. Cir. 2003); *Keller v. Embassy of the United States*, 522 F. Supp. 2d 213, 217 (D.D.C. 2007) (Collyer, J.). However, the Court need not accept as true inferences that are unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *Keller*, 522 F. Supp. 2d at 217. If it is clear as a matter of law that no relief could be granted even if all allegations in the Complaint are taken as true, then the claims in the Complaint must be dismissed. *Neitzke v. Williams*, 490 US. 319, 327 (1989) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S.

___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must

furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." *Bell Atlantic*, 127 S. Ct. at 1964-65; *see also Papasan v. Allain*, 478

U.S. 265, 286 (1986). The complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *Bell Atlantic,* 127 S. Ct. at 1965

(citations omitted).

　　　As discussed below, the Court should grant Unisys's motion to dismiss because

this Court lacks jurisdiction over his claims and/or there are no factual allegations that

would entitle Plaintiff to any relief against Unisys.[2]

## III.   ARGUMENT

### A. PLAINTIFF'S DCHRA CLAIMS IN COUNT II SHOULD BE DISMISSED FOR LACK OF JURISDICTION

　　　In Count II, Plaintiff alleges that he was subjected to a hostile work environment,

and otherwise unlawfully harassed based on his national origin, race and/or religion in

violation of the DCHRA. These claims are barred by the applicable statute of limitations.

In the alternative, these claims are barred by Plaintiff's election of remedies.

---

[2] While Unisys would dispute vigorously the facts alleged in the Complaint, it takes them as true solely for the purposes of this motion.

1. **This Court Lacks Jurisdiction Over Plaintiff's DCHRA Claims Because They are Barred by the Applicable One-Year Statute of Limitations**

Plaintiff's DCHRA claims on their face are barred by the DCHRA's one-year statute of limitations:

> A claim for employment discrimination filed under the DCHRA must be filed within one year after the date of the adverse employment action, or within one year after the time that the plaintiff knew or should have known that the employment action was undertaken for an unlawful purpose.

D.C. Code §2-1403.16(a). The D.C. Court of Appeals "strictly construe[s] this one year limitation." *Brown v. National Academy of Sciences*, 844 A.2d 1113, 1117 (D.C. 2004). Plaintiff left his employment with Unisys on October 21, 2005. Thus, this is the last possible date from which the statute of limitations could begin running.[3] He did not file his lawsuit until December 20, 2007, over two years later. Thus, this Court has no jurisdiction to hear his time-barred DCHRA claims.

In this regard, it is irrelevant that Plaintiff filed a charge of discrimination with the EEOC. Unlike Title VII, which requires pursuit of administrative remedies before resort to the courts, a claimant can pursue a DCHRA claim either by filing a complaint with the DCOHR, or through a court of competent jurisdiction, but not both. The options are mutually exclusive. *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (1981); D.C. Code §2-1403.16(a) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction … unless such person has filed a complaint hereunder" (emphasis added)). The only exceptions are where the DCOHR has dismissed a complaint "on the grounds of administrative

---

[3] As discussed below, however, the last date that his Compliant alleges any specific action against him is on or about June 17, 2005, some four months earlier.

convenience," or the complainant has withdrawn a complaint prior to a decision on the merits, in which situations the complainant "shall maintain all rights to bring suit as if no complaint had been filed." D.C. Code §2-1403.16(a). In *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 573 (D.C. 2007), the court held that the DCOHR's automatic deferral of jurisdiction to the EEOC pursuant to their work sharing agreement constitutes a dismissal "on the grounds of administrative convenience," with the result that the complainant still has a right to sue in court "as if no complaint had been filed."

Although Plaintiff did file a charge with the EEOC, and pursuant to the work sharing agreement that charge apparently was automatically also filed with the DCOHR,[4] it is undisputed that, also pursuant to that work sharing agreement, the DCOHR deferred jurisdiction to the EEOC. Thus, the charge was dismissed for administrative convenience at the latest on the day the EEOC notified the DCOHR of the charge, *i.e.*, June 22, 2006. Plaintiff's right to sue therefore was the same as if he had not filed with the DCOHR at all. D.C. Code §2-1403.16(a). Accordingly, the one-year statute of limitations began to run on either June 17, 2005 (the last date for which he alleges a specific adverse action against him) or October 21, 2005 (the last date of his employment). In either case, Plaintiff's filing of the instant suit more than two years later, on December 20, 2007, was untimely.[5]

---

[4] *See Schuler v. PricewaterhouseCoopers, LLP.*, No. 06-7207, __ F.3d __, 2008 WL 360923, *5-7 (D.C. Cir. Feb. 12, 2008) (holding that the existence of the D.C. work sharing agreement alone suffices for a charge filed with the EEOC to be considered also filed with the DCOHR).

[5] Even if the statute of limitations did not begin to run until the DCOHR administratively dismissed the charge that Plaintiff cross-filed via the EEOC on June 22, 2006, Plaintiff's filing of the instant DCHRA suit on December 20, 2007, nearly a year and one-half later, clearly is time barred.

Accordingly, Plaintiff's DCHRA claims in Count II are barred by the applicable statute of limitations. Consequently, this Court lacks jurisdiction over those claims and should dismiss them in their entirety.

### 2. Alternatively, This Court Lacks Jurisdiction Over Plaintiff's DCHRA Claims Because of His Prior Election of Remedies

Alternatively, assuming solely for the purposes of argument, that the time for filing a DCHRA claim somehow was tolled while the EEOC was investigating Plaintiff's EEOC charge, this Court lacks jurisdiction over Plaintiff's DCHRA claims because of his election of remedies.

Under the DCHRA, it is well-established that if a plaintiff chooses to pursue his complaint administratively all the way to the conclusion of the agency's investigation, a court lacks jurisdiction over a subsequent lawsuit involving the same matter. *Anderson v. U.S. Safe Deposit Co.*, 552 A.2d 859, 860-61 (D.C. 1989) (no jurisdiction to hear case filed after DCOHR had completed investigation); *Brown v. Capitol Hill Club*, 425 A.2d at 1312-13 (same). Although Plaintiff alleges that he received a "right to sue" letter because more than one hundred and eighty days had passed since the filing of his EEOC complaint (Complaint, ¶5), in fact, as set forth above, the undisputed documentary record shows that the EEOC investigated his charge and issued a decision on the merits. Thus, in its disposition notice, the EEOC made clear to Plaintiff that its factual investigation was over, and that it could not establish support for a statutory violation:

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON**:

*        *        *        *        *

> The EEOC issues the following determination: based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.

Monaghan Dec., Exhibit 8 (emphasis in original). Thus, to the extent that Plaintiff claims that despite the DCOHR's dismissal for administrative convenience, the DCHRA statute of limitations was tolled while his charge was pending with the EEOC, the EEOC's determination on the merits of his claim bars his DCHRA claim on the basis of election of remedies. *See Brown v. Capitol Hill Club*, 425 A.2d at 1312-13 (plaintiff who filed a charge with the DCOHR which the DCOHR investigated and found to have no probable cause was barred from brining the same action in court.)

As noted above, there are two exceptions to the election of remedies provision: (1) where the complaint is dismissed on ground of administrative convenience, or (2) where the complainant withdraws his complaint. D.C. Code §2-1403.16(a). Neither of these exceptions applies here.

First, the EEOC plainly did not dismiss the charge for "administrative convenience," but rather ruled on the merits. *See Brown*, 425 A.2d at 1312 (finding that disposition letter stating that the "investigation of the complaint was completed," was not a dismissal for administrative convenience). Alternatively, if the DCOHR is said to have dismissed the charge dual filed with it for "administrative convenience" while the EEOC continued to investigate it, then as discussed above the DCOHR did so only pursuant to the work sharing agreement, in which case the statute of limitations continued to run and the Complaint is time barred.

Second, it is undisputed that Plaintiff never withdrew his complaint from either the EEOC or the DCOHR prior to the completion of the agency investigation which resulted

in the no probable cause determination. Thus, the withdrawal exception also does not apply.

As Plaintiff never withdrew his complaint, and the EEOC never administratively dismissed it before it reached its no probable cause determination, this Court lacks jurisdiction over his claims, and they therefore should be dismissed under the election of remedies doctrine. *See, e.g., Brown*, 425 A.2d at 1313 ("[h]aving opted [for] the administrative route, appellant was barred from bringing the same [DCHRA] action in court."); *see also Lewis v. Owen Healthcare, Inc.,* No. Civ.A. 05-0689GK, 2005 WL 3213962 at *3 (D.D.C. Oct. 11, 2005) (Kessler, J.) (same); *Clifton v. Federal Nat'l Mortgage Ass'n,* No. CIV. 9702301 TFH, 1998 WL 419741, at *2 (D.D.C. Jan. 14, 1998) (Hogan, J.) ("This court lacks jurisdiction to hear a claim that has already been submitted to the Department of Human Rights."); *Weiss v. Int'l Bhd. of Elec. Workers*, 729 F. Supp. 144, 147 (D.D.C. 1990) (Harris, J.) (barring plaintiff's claim under the election of remedies doctrine); *Parker v. National Corp. for Housing Partnerships*, 697 F. Supp. 5, 7 (D.D.C. 1988) (Harris, J.) (finding that where neither statutory exception is met, the "plaintiff is precluded from bringing her claim under the [DCHRA] in any court.").

Accordingly, to the extent Plaintiff's DCHRA claims in Count II are not barred by the statute of limitations, they are barred by Plaintiff's election of remedies. Consequently, this Court lacks subject matter jurisdiction over those claims on these grounds as well, and should dismiss them in their entirety.

## B. PLAINTIFF'S TITLE VII CLAIMS IN COUNT I ARE BARRED DUE TO HIS FAILURE TO FILE A TIMELY CHARGE

In Count I, Plaintiff alleges that he was subjected to a hostile work environment, not promoted and otherwise unlawfully harassed based on his national origin, race and/or religion in violation of Title VII. He also alleges that Unisys violated Title VII by failing to investigate his complaint or take corrective action. These claims are barred due to his failure to file a timely charge with the EEOC. It is well established that under Title VII, in a deferral jurisdiction such as the District of Columbia, an individual must first file a charge with the EEOC no later than 300 days after the alleged unlawful practice occurred. 42 U.S.C. §2000e-5(e). *See Shankar v. ACS-GSI*, No. 02-1370, 2006 WL 1073073 at *2 (April 24, 2006) (Collyer, J.). Alleged unlawful employment practices which occurred more than 300 days prior to the filing of a charge are time barred, and cannot be the basis for Title VII claims, even where they may have a continuing effect. *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, _ U.S. _, 127 S. Ct. 2162, 2166-69 (2007); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002); *United Air Lines, Inc., v. Evans*, 431 U.S. 553 (1977); *Delaware State College v. Ricks*, 449 U.S. 250 (1980). As Plaintiff filed his EEOC charge on June 9, 2006, this means that any practices which occurred prior to August 12, 2005 cannot be the basis for his Title VII claims.

With respect to his promotion claim, Plaintiff alleges two discrete incidents in which he alleges he applied for positions that allegedly were awarded instead to white candidates, occurring on October 27, 2004 and on June 17, 2005. (Complaint ¶14.) Thus, both of these incidents occurred well over 300 days – indeed, over nineteen months as to the former and nearly a year as to the latter – before Plaintiff filed his

charge of discrimination on June 9, 2006. Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. at 105; *accord*, *Ledbetter*, 127 S.Ct at 2169; *Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 159 (D.D.C. 2004) (Collyer, J.). Accordingly, Plaintiff's claims of national origin, race and/or religious discrimination based on these alleged denials of promotion clearly are untimely, and must be dismissed for lack of jurisdiction due to his failure timely to invoke Title VII.

Plaintiff's hostile work environment/harassment claims are similarly time barred. Under *Morgan*, Plaintiff must allege that at least one act contributing to the alleged hostile environment occurred within the filing period. *Morgan*, 536 U.S. at 105, 117; *Coleman*, 310 F. Supp. 2d at 159. The latest incident alleged, however, is the June 17, 2005 promotion application, which is a discrete act of alleged discrimination, not an incident in an ongoing series of harassing actions, and, as noted above, in any event is time barred. While Plaintiff does allege (Complaint ¶17) a number of incidents that purportedly form the basis for his hostile environment claim, most of these alleged incidents on their face either (1) constitute discrete acts such as alleged demotion, failure to promote and recommendation for termination (Complaint ¶¶ 12, 14, 15) that he cannot bootstrap into a hostile environment claim (*see Rattigan v. Gonzales,* 503 F. Supp. 2d at 81-82 and cases cited therein); or (2) involve ordinary workplace tribulations such as difficulties with approval of time sheets and other paperwork, or alleged denials of vacation requests (Complaint, ¶¶ 10, 17), that are insufficient to establish a hostile environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Rattigan*, 503 F. Supp. 2d at 79-80. To the extent that Plaintiff may claim that the

remaining alleged incidents support a hostile environment claim (which Unisys strongly disputes), he has failed to allege when any of these incidents occurred. Moreover, in the context of the chronological order of the allegations of his Complaint, all of the alleged incidents fall between an alleged termination recommendation in November 2004 (Complaint ¶15) and his contacting Human Resources to complain in "late 2004." (Complaint ¶18). Thus, the only logical inference is that these alleged incidents occurred in 2004, nearly a year and one-half before he filed his EEOC charge on June 9, 2006.

In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court held that the Fed. R. Civ. P. 8 requirement to provide the "grounds" on which the pleader is "entitled to relief" requires factual allegations that are "enough to raise a right to relief above the speculative level" and not simply labels and conclusions, or a formulaic recitation of the elements of a cause of action. 127 S. Ct. at 1964-65. This requires, at a minimum, that a plaintiff specifically allege some act occurring within the applicable limitations period. *Morgan*, 536 U.S. at 117. As Plaintiff has failed to do so, the Court lacks jurisdiction over his hostile work environment/harassment claims as well.

Finally, to the extent Plaintiff's claim of failure to investigate his complaint and take corrective action is asserted as an independent violation of Title VII, as an initial matter this alleged incident is not an adverse action giving rise to a claim. *See, e.g., Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 72 (D.D.C. 2007) (Huvelle, J.). Rather than constitute an independent violation, it goes to a possible affirmative defense to Plaintiff's harassment allegations or possibly to damages. Even assuming, *arguendo*, that it somehow constitutes an adverse action, however, such a claim also is time barred.

Plaintiff specifically alleges that he first complained to the Human Resources department in "late 2004." Therefore, any failure to investigate or take corrective action occurred soon thereafter, and certainly long before beginning of the charge filing period on August 12, 2005, which is some eight months after he alleges he complained. In this context it is irrelevant that he alleges further communication with Human Resources on unspecified dates in 2005, as the failure to act already had occurred. *Morgan*, 536 U.S. at 114 (filing period for discrete acts of discrimination begins when they occurred); *Delaware State College v. Ricks*, 449 U.S. at 258 (discrimination occurs at time of action, not when its effects are most severe).

### C. PLAINTIFF'S TITLE VII CLAIMS IN COUNT I AND DCHRA CLAIMS IN COUNT II OF A HOSTILE WORK ENVIRONMENT BASED ON RELIGION OR NATIONAL ORIGIN FAIL TO STATE A CLAIM

Assuming, *arguendo*, that Plaintiff's hostile work environment claims are not time-barred, he has failed to allege sufficient facts to state a claim of a hostile work environment based on his national origin or religion under either Title VII or the DCHRA.[6] Although a plaintiff need not plead each element of a prima facie case to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), he still must allege facts that, if true, would establish the elements of each claim. *Major v. Plumbers Local Union No. 5,* 370 F. Supp. 2d 118, 128-29 (D.D.C. 2005). Furthermore, courts "can . . . explore the plaintiff's *prima facie* case at the dismissal stage to determine 'whether the plaintiff can *ever* meet his initial burden to establish a *prima*

---

[6] Plaintiff's substantive claims under Title VII in Count I are identical to those under the DCHRA in Count II, with the exception that Plaintiff does not allege a denial of promotion in Count II. Accordingly, to the extent that Count II is not dismissed for lack of jurisdiction on the grounds discussed in part III(A) above, the same arguments presented in this part as to Plaintiff's failure to state a claim under Title VII also apply to his claims under the DCHRA. *See Odeyale v. Aramark Management Services Ltd. Partnership*, 518 F. Supp. 179, 183 n.6 (D.D.C. 2007) (Collyer, J.) (courts look to federal cases interpreting Title VII in construing the DCHRA); *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003) (same).

*facie* case' for Title VII [of DCHRA] discrimination." *Rattigan v. Gonzales*, 503 F. Supp.

2d 56, 72 (D.D.C. 2007) (Huvelle, J.) (citations omitted).

This Court recently set forth the requirements for a hostile work environment

claim:

> To establish a prima facie hostile work environment claim, a plaintiff must demonstrate (1) that she is a member of a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment occurred because of her race or gender [or national origin or religion], (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it. *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).
>
> In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance. *Harris [v. Forklift Sys., 510 U.S. 17, 23 (1993)]*. The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code." *Faragher [v. City of Boca Raton*, 524 U.S. 775, 788 (1998)]. Consequently, " 'mere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (*quoting Meritor [Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)]. Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778, 118 S.Ct. 2275. A plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims ... are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*, 536 U.S. 101, 115-16, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)). "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

*Taylor v. Chao*, 516 F. Supp. 2d 128, 135-36 (D.D.C. 2007) (Collyer, J.)

Plaintiff's hostile environment/harassment claims are based on various alleged actions by Mr. Testa. However, as already noted in part III(B), above, most of the incidents that he alleges on their face either (1) constitute discrete acts that he cannot bootstrap into a hostile environment claim or (2) involve ordinary workplace tribulations that are insufficient to establish a hostile environment claim. Furthermore, there is nothing to provide the necessary nexus between these alleged incidents and Plaintiff's religion or national origin, and therefore they cannot support a claim for hostile work environment. *Odeyale v. Aramark Management Services Ltd. Partnership*, 518 F. Supp. at 184 n.7.

Most notably, there are no facts alleged that any act occurred because of his religion, much less allegations of religious-based conduct sufficiently extreme to constitute an alteration in Plaintiff's conditions of employment that could establish the elements of a religious harassment claim. Thus, Plaintiff has failed to state a claim of harassment or other discrimination based on religion.

Furthermore, there is only one allegation regarding Plaintiff's national origin: that Mr. Testa once, in December 2003, referred to "the incident in Somalia in the early 1990's involving U.S. servicemen"[7] and allegedly also said that "all Somalis should be hung." (Complaint ¶11.) Notably, there is no allegation that Mr. Testa ever made any other comments regarding Plaintiff's national origin. This allegation of a single incident is insufficient to establish a claim of national origin harassment. Rather, it is precisely the type of isolated incident that is insufficient to constitute a discriminatory change in the terms and conditions of employment. *Faragher*, 524 U.S. at 778; *see also Odeyale*,

---

[7] Unisys presumes this is an attempt to refer to the so-called "Blackhawk down" incident in 1993 in which U.S. helicopters were shot down, and/or other U.S. military operations in Somalia at that time.

518 F. Supp. 2d at 184 (alleged name calling over three days insufficient to asset hostile environment claim). Furthermore, " 'mere utterance of an … epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VIII.' " *Harris*, 510 U.S. at 21 (*quoting Meritor*, 477 U.S. at 67). Accordingly, Plaintiff also has failed to state a claim of harassment or other discrimination based on national origin.

### D. PLAINTIFF'S RETALIATION CLAIMS IN COUNT III ALSO MUST BE DISMISSED FOR LACK OF JURISDICTION AND/OR FAILURE TO STATE A CLAIM

In Count III, Plaintiff alleges that after he complained in December 2004 about Mr. Testa's alleged conduct, Unisys retaliated against him in unspecified ways and allowed the allegedly unlawful conduct to continue. He fails to state whether this claim is brought under Title VII or the DCHRA. Under either statute, however, either he has failed to state a claim or this Court lacks jurisdiction.

As an initial matter, Plaintiff has failed to allege any particular retaliatory act at all. A claim of retaliation requires an adverse personnel action. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). A plaintiff must allege facts that, if true, would establish the elements of each claim. *Bell Atlantic*, 127 S. Ct. at 1964-65; *Major v. Plumbers Local Union No. 5,* 370 F. Supp. 2d at 128-29. Thus, it is not enough to allege the existence of retaliation; there must be some allegation as to what the alleged retaliatory act is. The absence of any alleged retaliatory act means that Plaintiff can never meet his initial burden to establish a prima facie case of retaliation. On this basis alone, this count should be dismissed for failure to state a claim.

Even assuming, *arguendo*, that Plaintiff's Complaint can be read broadly as asserting that some or all of the other incidents alleged in the Complaint constitute the

alleged retaliatory actions, under either statute a retaliation claim is time barred. As discussed in part II(A), above, a claim under the DCHRA is barred by the applicable one-year statute of limitations. Under Title VII, Plaintiff has failed to alleged any particular retaliatory act that occurred within 300 days of the filing of his EEOC charge, *i.e.*, on or after August 12, 2005. As noted above, the most recent specific incident alleged, a promotion denial, occurred in June 2005, nearly a year before he filed his charge in June 2006. Accordingly, his claim is time-barred and this Court lacks jurisdiction over it.

IV.    **CONCLUSION**

For the reasons set forth above, this Court lacks jurisdiction over Plaintiff's claims and/or Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Unisys respectfully requests that this Court dismiss the case in its entirety, with prejudice.

EPSTEIN BECKER & GREEN, P.C.


_____/s/ Frank C. Morris, Jr._____
Frank C. Morris, Jr.
Bar No. 211482

_____/s/ Brian Steinbach_____
Brian Steinbach
Bar No. 256727

1227 25th Street, N.W., Suite 700
Washington, D.C. 20037
(202) 861-0900

Attorneys for Defendant
Unisys Corporation

DATED: March 4, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Memorandum of Law in Support of Defendant Unisys Corporation's Motion to Dismiss was served on the 4th day of March, 2008 via electronic delivery upon the following:

John E. Carpenter, Esq.
910 17th Street, N.W. Suite 800
Washington, D.C. 20006

Counsel for Plaintiff


 /s/ Brian Steinbach
Brian Steinbach

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILL IBRAHIM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:07-CV-02295 RMC** |
| **UNISYS CORPORATION,** | |
| **Defendant.** | |

## DECLARATION OF JOHN P. MONAGHAN

I, John P. Monaghan, declare as follows:

1.      I am an Assistant General Counsel, HR Law, for Unisys Corporation ("Unisys"), the Defendant in this proceeding. The facts in this Declaration are based on personal knowledge or the Company's business records.

2.      In my capacity as Assistant General Counsel, HR Law, I am responsible for, among other things, investigating and responding to charges of discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC").

3.      On or about June 28, 2006, I received from the U.S. Equal Employment Opportunity Commission ("EEOC") a "Notice of Charge of Discrimination," dated June 22, 2006, in the matter of *Ibrahim v. Unisys Corporation,* EEOC Charge No. 570-2006-01313. Enclosed with that document were, among other things, a partially completed, unsigned and undated EEOC Form 5, "Charge of Discrimination", in which the "particulars" section stated only "SEE ATTACHMENT;" and a separate five page typed document with numbered paragraphs titled "Charge of Discrimination" (but which otherwise referenced no complaint or charge number), that was simply signed by the Charging Party, Bill Ibrahim, and his attorney, John E. Carpenter, Esquire, and bearing

a time stamp indicating receipt by the EEOC on June 9, 2006. A copy of these documents is attached as Exhibit A.

4.      In reviewing these documents provided to Unisys, I noted the absence of any place where the Charging Party had provided an "oath or affirmation" as to the truth of the assertions therein, as required by 42 U.S.C. 2000e-5(b). As the U.S. Supreme Court has made it clear that an employer is not obliged to respond to a charge until after its allegations are sworn to or otherwise affirmed, by letter dated August 28, 2006 I wrote to the EEOC calling its attention to this problem and requesting that it provide Unisys with a copy of "Mr. Ibrahim's charge that is properly, notarized, sworn and/or attested to," in accordance with the requirements of the statute. A copy of that letter is attached as Exhibit B.

5.      After two additional requests for this information (dated November 10, 2006 and July 19, 2007), on July 20, 2007 I received a fax from Joseph M. Hardiman III, Area Office Director for the Pittsburgh Area Office of the EEOC, enclosing a completed EEOC Form 283, "Charge Questionnaire," which indicated that it was signed by Mr. Ibrahim on June 6, 2006 under the statement "I declare under penalty of perjury that the foregoing is true and correct." This document bore a time stamp indicating receipt by the EEOC on June 9, 2006.   Again, however, the section for alleging the actions believed to be discriminatory simply stated "See attached", and no attachment accompanied the Form 283 which Mr. Hardiman faxed to me.  A copy of this document is attached as Exhibit C.

6.      Prior to receiving the July 20, 2007 fax, I had received a voice mail message from Mr. Hardiman indicating that he was sending me this completed Form

283 document in response to my requests for proof of properly sworn to or affirmed charge allegations.

7.      Accordingly, by letter dated July 30, 2007, I asked the EEOC to confirm that the "attachment" referenced in the Form 283 "Charge Questionnaire" which Mr. Hardiman had faxed me was in fact the same five page typed document with numbered paragraphs titled "Charge of Discrimination" that was included in the materials which accompanied the Notice of Charge of Discrimination which Unisys had originally received in July 2006. A copy of this document is attached as Exhibit D. I never received any written response to this letter.

8.      On September 25, 2007, the EEOC issued a "Dismissal and Notice of Rights" in this matter. A copy of this document is attached as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of March, 2008 at Blue Bell, Pennsylvania.



_____/s*_____
John P. Monaghan


*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

**EXHIBIT A**

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr John Monaghan<br>Senior Counsel<br>UNISYS CORPORATION<br>Unisys Way<br>MS E8-114<br>Blue Bell, PA 19424<br><br>*Received*<br>JUN 2 8 2006<br>John P. Monaghan | **Bill Ibrahim** |

THIS PERSON *(check one or both)*

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**570-2006-01313**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act    [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act    [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **24-JUL-06** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **06-JUL-06** to **John Woods, ADR Coordinator, at (202) 419-0727** If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Stanika K. Smith,**
**Investigator Support Asst**

*EEOC Representative*

*Telephone* **(202) 419-0743**

**Washington Field Office - 570**
**1801 L Street, N.W.**
**Suite 100**
**Washington, DC 20507**

Enclosure(s): [X] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [X] COLOR  [ ] SEX  [X] RELIGION  [X] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER

## See enclosed copy of charge of discrimination.

---

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| June 22, 2006 | Dana Hutter,<br>Director | *Dana R Hutter* |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 570-2006-01313 |

| D.C. Office Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Bill Ibrahim | (202) 271-1222 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 4207 Jennifer St., N.W., Washington, DC 20015 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNISYS CORPORATION | 500 or More | |

| Street Address | City, State and ZIP Code |
|---|---|
| @ CAPITOL HILL, Washington, DC 20510 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☒ COLOR  ☐ SEX  ☒ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 12-01-2003 | 10-21-2005 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**\*SEE ATTACHMENT\***

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date _____  Charging Party Signature | |

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

BILL IBRAHIM                          *
4207 Jennifer Street NW               *
Washington, D.C. 20015                *
                                      *          Complaint No.
                                      *
                                      *
          Complainant,                *
v.

UNISYS CORPORATION                    *
Blue Bell, Pennsylvania 19424         *
                                      *

          Respondent.                 *

*      *      *      *      *      *      *

### CHARGE OF DISCRIMINATION

1. The petitioner, Mr. Bill Ibrahim first became employed with the respondent

   company in September 2002 in the position of team leader in the corporate

   information systems department. Complainant, a Muslim, is originally from

   Somalia and became a citizen of this country in 1996. Respondent is a company

   whose corporate headquarters is in Blue Bell Pennsylvania and does business in

   the Washington metropolitan area, including the District of Columbia.

2. At all operative times, Paul Testa was a manager at Unisys and the complainant's

   direct supervisor while he was employed with the company. Complainant has

   worked in the computer field since 1986 and is certified in various programs,

   including but not limited to MCSE, MCSA, Rt and network plus. While

   employed with the respondent company, complainant was dispatched to service

   various clients of the respondent company throughout the metropolitan area.

1

3. After becoming employed by the respondent, complainant was subjected to a hostile work environment created and sustained by Mr. Testa. In July 2003, Mr. Testa informed the complainant that he was not going anywhere in the company. There was no basis for such an assertion by Mr. Testa other than his dislike for the complainant. In December 2003, Mr. Testa referred to the incident in Somalia in the early 1990's involving U.S. servicemen and further stated in complainant's presence that all Somalis should be hung.

4. In 2004, the complainant was demoted from his position as team leader without explanation or justification. Complainant was never promoted during the entire time that he was employed by the respondent. In November 2004, Mr. Testa recommended that the complainant be terminated from employment and again asserted that he was not going anywhere in the company. Mr. Testa had disdain for the complainant because he was originally from Somalia Africa, is Muslim and possesses dark skin.

5. Mr. Testa continued to maintain a hostile work environment for the complainant by routinely doing the following:

    a. Rejected time sheets submitted by complainant without justification;

    b. Rejected training vouchers submitted by the complainant and denied him the opportunity to receive training which would allow him to advance in his profession;

    c. Rejected expense vouchers submitted by the complainant again without justification and refused to pay the expenses incurred;

    d.  Routinely denied requests for vacation made by the complainant again without justification;

    e.  Refused to sign clearance sheets submitted by complainant again in doing so denied the complainant the opportunity to advance in the company;

    f.  Routinely called the complainant names in the workplace such as nigger and boy. He further stated that if the complainant contacted the Human Resources Department nothing would happen and at one point stated that if HR was called I will hang you.

No other similarly situated employees of the respondent company were treated in such a way as the complainant.

6.  Complainant's work environment became so hostile and intolerable that he did in fact contact the HR department in late 2004 and informed it of the manner in which Mr. Testa was treating him. Complainant continued to communicate with HR at their offices in Norcross, Georgia throughout 2005 concerning the hostile work environment he was being subjected to, however, no corrective action was either recommended or taken by the respondent. Ultimately realizing that the respondent did not intend to deal with the situation and the unlawful conduct continuing unabated, complainant resigned his position from the company on or about October 21, 2005. In effect, complainant was constructively discharged from his position with respondent at that time.

## I. VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

7.  Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex or national origin.  42 U.S.C. §2000(e).

8.  Mr. Ibrahim was subjected to a hostile work environment, not promoted and was

otherwise unlawfully harassed in the workplace due to his country of national

origin, race, and /or religion in violation of Title VII of the Civil Rights Act of

1964, 78 Stat. 253, as amended, 42 U.S.C. §2000(e).

9.  Title VII was further violated in that the respondent company failed to investigate

a legitimate complaint filed by the petitioner and failed to take any corrective

action concerning the conduct complained of.

## II.  VIOLATION OF DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

10. Mr. Ibrahim was subjected to a hostile work environment and was otherwise

unlawfully harassed in the workplace due to his country of national origin, race

and /or religion in violation of the District of Columbia Human Rights Act.

11.  The D.C. Human Rights Act was violated in that the respondent company failed

to investigate a legitimate complaint filed by the petitioner and failed to take any

corrective action concerning the conduct in question.

## III.  RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

12. Mr. Ibrahim correctly complained about Mr. Testa's unlawful conduct, filed a

complaint with the respondent company and sought corrective action from the

respondent company.  Rather than doing what is required under the law,

respondent retaliated against the petitioner for engaging in protected activity and

allowed the unlawful conduct to continue unabated.

4

## RELIEF SOUGHT

Assuming that the commission finds violations of the aforementioned laws by the respondent, petitioner seeks the following by way of remedies:

1. Compensatory and punitive damages and attorneys fees and costs as allowed under applicable law; and

2. Reimbursement for all overtime and expenses incurred by the complainant for which he was not properly paid;

3. All other relief the Commission deems appropriate.

Respectfully Submitted,

Bill Ibrahim
4207 Jennifer Street NW
Washington, D.C. 20015

Complainant

John E. Carpenter, Esquire
910 17th Street NW  Suite 800
Washington, D.C. 20006
(202) 887-5445

Attorney/Designated Representative
for the Petitioner

**EXHIBIT B**

Unisys Corporation
Unisys Way
Blue Bell PA 19424

# UNISYS

(215) 986-3055

August 28, 2006

**VIA U.S. MAIL**

Ms. Stanika K. Smith, Investigator Support Assistant
EEOC
Washington Field Office
1801 L Street, N.W.
Suite 100
Washington D.C., 20507

Re:    ~~Ibrahim v. Unisys Corporation~~, EEOC No. 570-2006-01313

Dear Ms. Smith:

Per my original entry of appearance, Unisys is presently in the process of finalizing its position statement and accompanying documentation in the above-referenced matter. In light of the detailed history of this matter, it is an extremely voluminous document, and we have every intention of sending it to your attention shortly to assist your investigation.

However, during the course of preparing our position statement, I became aware of a serious procedural deficiency with the above-referenced charge. Specifically, the "charge of discrimination" which Unisys was provided was not prepared on EEOC Form "5", as is typical practice, but was merely a typed document which appears to have been prepared on plain paper by charging party and/or his counsel, and signed by both. There is absolutely NO indication anywhere on the face of the "charge" that the Charging Party has "sworn or affirmed" the truth of the assertions contained therein, and the charge has not been notarized.

As the agency well knows, 42 U.S.C. 2000e-5(b) requires that all charges "shall be in writing under oath or affirmation". While the Supreme Court has held that such "technical" procedural defects can be later cured pursuant to 29 CFR 1601.12(b), it also made very clear that an employer need not defend such charges until the allegations are sworn to or otherwise affirmed:

> The verification requirement has the . . . object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury. This object . . . demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC.

Edelman v. Lynchburg College, 122 S.Ct. 1145, 1149 (2002).

Frankly, our investigation reveals that many of the statements contained in charging party's unsworn "charge" are demonstrably false, and would constitute perjury should he have the audacity to swear to them. Thus, consistent with the Supreme Court guidance in Edelman, Unisys must insist --prior to "defending itself" and providing to the agency with its detailed position statement— that it be provided with a copy of Mr. Ibrahim's charge that is properly notarized, sworn and/or attested to in accordance with all 42 U.SC. 2000e-5(b) requirements. Once Mr. Ibrahim is "locked into" such sworn allegations, Unisys will immediately provide the detailed position statement and factual statement which it has prepared which completely refutes

1

his fabricated claims (and thereby foreclose any "revisions" when he is confronted with the truth)..

I trust that insisting upon the charging party's correction of this fundamental procedural defect will not cause any problem.    Should you have any questions regarding any of the above, or need any additional information, please do not hesitate to let me know.

Very truly yours,

John P. Monaghan
Assistant General Counsel, HR Law
EEO/OFCCP Compliance Programs Director

2

**EXHIBIT C**

Jul-20-07  15:21    From-EEOC PITTSBURGH PA        +412 644 2664      T-911  P.001/003  F-881



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Pittsburgh Area Office

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

DATE:        _07/20/07_

TO:          _John P. Monaghan, ESQ_
             _Asst. General Counsel, HR Law_
             _UNISYS_

FROM:        Pittsburgh Area Office

SENDER:      Joseph M. Hardiman III,  Area Director _JH_

This transmission contains ____3____ pages
Including this cover sheet.

_For my phone message to you this afternoon, please see_
_ATTACHMENTS_

IF YOU DO NOT RECEIVE ALL PAGES OR THERE ARE PROBLEMS WITH THE
TRANSMISSION, IMMEDIATELY CONTACT SENDER AT 412/644-3444.



Jul-20-07    15:21    From- EEOC  PITTSBURGH PA                    +412 644 2664        T-911   P.002/003   F-891

# CHARGE QUESTIONNAIRE

| | EEOC Use Only | Name (Intake Officer) |

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on back before completing this form.

Please answer the following questions, telling us briefly why you believe you have been discriminated against in employment. An officer of the EEOC will talk with you after you complete this form.

NAME  Bill  (First)  IBRahim  (Middle Name or Initial)  (Please Print)  (Last)   DATE  June 6, 2006

ADDRESS  4207 Jenifer St. NW   TELEPHONE NO. (Include area code)  202-271-1222

CITY  WASHINGTON   STATE  DC   ZIP  20015   COUNTY

Please provide the name of an individual at a different address in your local area who would know how to reach you.

NAME  ELISA Ruth   RELATIONSHIP  SISTER   PHONE  703-589-208

ADDRESS  12230 Applecourt  orchard ct   CITY  FAIRFAX   STATE  VA   ZIP  22003

I believe I was discriminated against by: (Check those that apply)

☑ EMPLOYER (APPROX. NO. EMPLOYED BY THIS EMPLOYER) ☐ UNION (Give Local No.) ☐ EMPLOYMENT AGENCY ☐ OTHER (Specify)

NAME  UniSyS CorporatioN   NAME

ADDRESS   ADDRESS

CITY, STATE, ZIP  BluE bEll PennsylvaniA, 1942   CITY, STATE, ZIP

If you checked "Employer" above, are you now employed by the Employer that you believed discriminated against you?

YES: From _____ (date)  _____ (current position)   NO: I applied for _____ (position)  on _____ (Date)   OR: I was employed as  team leader (position)  until  10/24/05 (date)  I was  const.  (laid off, fired, etc.)  dismissed

What action was taken against you that you believe to be discriminatory? What harm, if any, was caused to you or others in your work situation as a result of that action? (If more space is required, use reverse.)

See aHached

WHAT WAS THE MOST RECENT DATE THE HARM YOU ALLEGED TOOK PLACE?  10/24/05

EEOC Form 283 (10/94)

Why do you believe this action was taken against you?

Check the one (s) that apply: Race (✓) Sex ( ) Color (✓) Religion (✓) National Origin (✓) Age (✗) Disability ( ) Other ( )

For each one that you checked above, please specify the particular race, sex, etc that pertains to you. For any block(s) that you checked, explain why you believe this was the reason for the action taken against you.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Normally, your identity as a complainant will be disclosed to the organization which allegedly discriminated against you.
Do you   [✗] consent or   [ ] not consent   to such disclosures?

Have you sought assistance about the action you think was discriminatory from any agency, from your union, an attorney, or any other source?   [ ] No   [✗] Yes   (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE   John E. Carpenter  Atty                DATE _____

RESULTS IF ANY:   advised to file a charge

Have you filed a complaint about the action you think was discriminatory with any other Federal, State, or Local Government Anti-discrimination agency?   [✗] No   [ ] Yes   (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE   _____   DATE _____

RESULTS IF ANY:   _____

Have you filed an EEOC Charge in the past?   [ ] No   [✗] Yes   (If answer is yes, complete below)

APPROX. DATE FILED   2000        ORGANIZATION CHARGED   Mercy Center        CHARGE NUMBER (IF KNOWN)   Unknown

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE   _____        DATE   June 6, 2006

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 283, Charge Questionnaire (12/93).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will consider it with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).
4. ROUTINE USES. Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to charging parties in consideration of or in connection with litigation.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

Reverse Side of Form 283 (10/94)

**EXHIBIT D**

# UNISYS

(215) 986-3055

July 30, 2007

## VIA FACSIMILIE & U.S. MAIL

Mr. Ishamel Johnson, Investigator
Mr. Joseph Hardiman, Area Office Director
EEOC
Pittsburgh Area Office
1001 Liberty Avenue
Liberty Center, Suite 300
Pittsburgh, PA 15222-4187

Re:    Ibrahim v. Unisys Corporation, EEOC No. 570-2006-01313

Dear Mr. Hardiman and Mr. Johnson:

I am writing to acknowledge the response I received from Mr. Hardiman to the concerns which I raised in my letter dated July 9th. I apologize for the delay in acknowledging your response, but I have been, and am currently on a much needed summer vacation.

As I think you could tell from my letter(s), the issue I raised was an extremely serious matter going to the threshold issue as to whether Mr. Ibrahim ever swore to/verified the allegations made in his charge. I do appreciate the immediate response I received to my concerns from the Pittsburgh office, especially after the Washington office failed to respond to my earlier letters.

As I now understand it, Mr. Ibrahim signed and "swore off" to the allegations which he made in an attachment to the EEOC's "Charge Questionnaire" form that he then submitted to the agency. Although I still question whether this is technically compliant,[1] I concur that case law has found that such informal verification/attestation is likely sufficient to proceed. However, there is one final clarification that I would like to make sure of, having listened to Mr. Hardiman's voicemail and been confused to the references to the various "numerical forms" which Mr. Ibrahim completed. Would you please confirm for me that the "attachment" referenced in the charge questionnaire (the form that Mr. Ibrahim "swore to"), is the same document which was attached to the "charge of discrimination" that was provided to Unisys. I just want to be absolutely certain that the allegations which Unisys has responded to in the position statement which I prepared are the same as those which Mr. Ibrahim swore to before the EEOC.

Once again, I do appreciate your prompt and professional attention to my concerns. Upon my return to the office next week, I will send via Federal Express the bound position statement and its voluminous accompanying exhibits (I believe there are nearly 50) to Mr. Johnson's attention to assist his investigation.

---

[1] Please note that, by providing the position statement and other materials your office has requested to assist your investigation, Unisys does not waive any defenses which may be available to it in this matter, and reserves any and all rights which it may have under the law to challenge the sufficiency and adequacy of Mr. Ibrahim's charge and/or compliance with charge filing requirements.

1

Should you have any questions, please let me know.

Very truly yours,

John P. Monaghan /cbr

John P. Monaghan
Assistant General Counsel, HR Law
EEO/OFCCP Compliance Programs Director


Cc:     Ms. Marie M. Tomasso, District Director
        EEOC
        Philadelphia District Office
        The Bourse Building
        21 S. Fifth Street, Suite 400
        Philadelphia PA 19106

**EXHIBIT E**

EEOC Form 161 (3/98)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Mr. Bill Ibrahim
4207 Jennifer Street, NW
Washington, DC 20015

From: Pittsburgh Area Office
1001 Liberty Avenue
Suite 300
Pittsburgh, PA 15222

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2006-01313 | **Legal Unit** | **(215) 440-2828** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of **this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_Joseph M. Hardiman III_                    09/25/07

Enclosure(s)                **Joseph M. Hardiman, III**                (Date Mailed)
**Area Director**

cc: UNISYS Corporation

**EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILL IBRAHIM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:07-CV-02295 RMC** |
| **UNISYS CORPORATION,** | |
| **Defendant.** | |

## <u>DECLARATION OF BRIAN STEINBACH</u>

I, Brian Steinbach, declare as follows:

1.      I am a Senior Counsel with Epstein Becker & Green, P.C., counsel for Defendant Unisys Corporation ("Unisys") in this proceeding. The facts in this Declaration are based on personal knowledge or the firm's business records.

2.      By letter dated January 16, 2008, a copy of which is attached as Exhibit A, Terry Eaton, a former Associate with Epstein Becker & Green, P.C., sent a Freedom of Information Act request to the District of Columbia Office of Human Rights ("DCOHR") requesting production of the DCOHR's file and any and all documents regarding or relating to the charge; that if the DCOHR deferred to the U.S. Equal Employment Opportunity Commission ("EEOC") and did not conduct a separate investigation, to confirm this in writing; and to provide a copy of the Work Share Agreement between the DCOHR and the EEOC in effect from 2006 to 2007.

3.      By letter dated January 28, 2008, a copy of which is attached as Exhibit B, the DCOHR responded to Mr. Eaton. Among other things, the DCOHR stated:

> A search of the OHR files discloses only the enclosed documents that were submitted when the EEOC cross filed the claim with the OHR. As you are aware, the charge was originally filed with the EEOC. Pursuant to the work share agreement and indicated on the EEOC Charge Transmittal Form, the agency initially receiving the charge conducts the investigation

unless the Complainant requests that the charge be transferred to the OHR. As the OHR has no other documents, there is no indication that the Complainant requested that the charge be transferred. Neither the OHR nor the EEOC duplicates investigations by conducting an investigation of a claim that is already being investigated by the other agency. You stated that the EEOC Pittsburgh Area Office investigated the charge and issued a "No Cause" finding. All other documents are probably in the EEOC files.

4.      Attached as Exhibit C are the EEOC Transmittal Form dated June 22, 2006 and related documents produced by the DCOHR as referenced in its January 28, 2008 letter.

5.      Attached as Exhibit D is the Worksharing Agreement between the EEOC and the DCOHR for fiscal year 2006 produced by the DCOHR as referenced in its January 28, 2008 letter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th day of March, 2008 at Washington, D.C.



_____
                    /s*
                Brian Steinbach

*Counsel hereby certifies that he has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.

**EXHIBIT A**

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW

1227 25TH STREET, NW, SUITE 700

WASHINGTON, DC 20037-1175

202.861.0900

FAX: 202.296.2882

EBGLAW.COM

TERRY EATON
TEL: 202.861.5336
FAX: 202.861.3096
TEATON@EBGLAW.COM

January 16, 2008

**VIA FACSIMILE & U.S. MAIL**

Ms. Jewell Little
D.C. Office of Human Rights
Attorney Advisor
One Judiciary Square
441 4th Street NW, Suite 570 North
Washington, D.C. 20001

> **Re:   EEOC Charge No. 570-2006-01313**
> **FOIA Request**

Dear Ms. Little:

   We represent UNISYS Corporation in a case commenced by Bill Ibrahim in U.S. District Court for the District of Columbia, Case 07-CV-02295 RMC based on the above noted EEOC Charge filed by Mr. Ibrahim.  Mr. Ibrahim originally filed the charge on July 9, 2006 at the Washington, D.C. EEOC Field Office.  The discrimination charge was cross filed with the D.C. Office of Human Rights ("OHR").  The charge alleges workplace discrimination which allegedly occurred between December 1, 2003 and October 21, 2005.  The EEOC Pittsburgh Area Office investigated this charge.  On September 25, 2007, the EEOC issued a "No Cause" finding and a "Right to Sue Letter" to Mr. Ibrahim.

   Under the Freedom of Information Act, we respectfully request the OHR's file and any and all documents regarding or relating to the above referenced charge.  If the OHR deferred to the EEOC and did not conduct a separate investigation, please confirm this in writing.  Please send the requested files and documents and/or letter verifying that no investigation occurred to my attention at the address shown above.

   We also request a copy of the Work Share Agreement between OHR and the EEOC, that was in effect in 2006 and 2007.  We will be responsible for any reasonable costs in filling these requests.

DC:1259496v2

Ms. Jewell Little
January 16, 2008
Page 2


Please feel free to contact us if you have questions or concerns.  We appreciate your cooperation.

With kind regards,


Terry Eaton

**EXHIBIT B**

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## OFFICE OF HUMAN RIGHTS



Judiciary Square Office
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589

Penn Branch Office
220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC  20020
Phone:  (202) 727-4559 • Fax: (202) 645-6390

January 28, 2008

Terry Eaton, Esquire
EPSTEIN BECKER & GREEN, P.C.
1227 – 25th Street, NW, Suite 700
Washington, DC 20037-1175

Re:  ***Freedom of Information Act (FOIA) Request***
     ***EEOC Charge No. 570-2006-01313***

Dear Mr. Eaton:

This letter is in response to your request that the D.C. Office of Human Rights (OHR) provide you with any and all documents regarding or relating to the above referenced charge and a copy of the Work Share Agreement between the OHR and the EEOC.  You have advised that you represent the Respondent in the matter.

In accordance with FOIA, you are entitled to all documents except those specifically exempted from disclosure by the FOIA statute.  Social security numbers and other pertinent privacy information are exempted from disclosure pursuant to D.C. Code §§ 2-534(a)(2) and (a)(3)(E) which provide in pertinent part:

***"The following matters may be exempt from disclosure under the provisions of this subchapter: unwarranted invasion of personal privacy and investigative techniques."***

Accordingly, investigators' notes that tend to reveal the deliberative process and internal agency action are also exempted from disclosure.  Provision of such information could hinder the investigation and such a result would be against the public interest of ensuring the full and complete investigation of complaints of discrimination or non-compliance.

A search of the OHR files discloses only the enclosed documents that were submitted when the EEOC cross filed the claim with the OHR.  As you are aware, the charge was originally filed with the EEOC.  Pursuant to the work share agreement and indicated on the EEOC Charge Transmittal Form, the agency initially receiving the charge conducts the investigation unless the Complainant requests that the charge be transferred to the OHR.  As the OHR has no other documents, there is no indication that the Complainant requested that the charge be transferred.  Neither the OHR nor the EEOC duplicates investigations by conducting an investigation of a claim that is already being investigated

by the other agency. You stated that the EEOC Pittsburgh Area Office investigated the charge and issued a "No Cause" finding. All other documents are probably in the EEOC files.

If you deem any portion of this response to be a denial of your request, you have the right to appeal to the Mayor, or you may seek judicial review in the Superior Court, pursuant to D.C. Official Code § 2-537 (2001) and 1 D.C.M.R. § 412. If you elect to appeal to the Mayor, your appeal should be in writing, should include a statement of the arguments, circumstances, or reasons in support of the information sought by your request, should include a copy of your original FOIA request and of the agency's written denial letter issued to you, and should reflect that you have served a copy of your appeal on the agency. You may address your appeal to the Mayor to: Office of the Secretary, Wilson Building, 1350 Pennsylvania Avenue, N.W., Suite 419, Washington, D.C. 20004.

Also find enclosed a copy of the requested Work Share Agreement.

Sincerely,

Jewell T. Little
Agency Counsel/FOIA Officer
D.C. Office of Human Rights
441 4th Street, N.W., Suite 570N
Washington, DC 20001
(202) 727-6910

**EXHIBIT C**

EEOC Form 212-A (3/98)

# U.S. Equal Employment Opportunity Commission

TO:    **D.C. Office Of Human Rights**
    **441 4th Street, N.W.**
    **Room 570N**
    **Washington, DC 20001**

Date    **June   22, 2006**
EEOC Charge No.
    **570-2006-01313**

FEPA Charge No.

CHARGE TRANSMITTAL

SUBJECT:

| | | |
|---|---|---|
| **Bill Ibrahim** | v. | **UNISYS CORPORATION @ CAPITOL HILL** |
| *Charging Party* | | *Respondent* |

Transmitted herewith is a charge of employment discrimination initially received by the:

☒ EEOC    ☐ _____  on  **Jun 09, 2006**

                   *Name of FEPA*            *Date of Receipt*

[X] Pursuant to the worksharing agreement, this charge is to be initially investigated by the EEOC.

☐ Pursuant to the worksharing agreement, this charge is to be initially investigated by the FEPA.

☐ The worksharing agreement does not determine which agency is to initially investigate the charge.

    ☐ EEOC requests a waiver        ☐ FEPA waives

    ☐ No waiver requested        ☐ FEPA will investigate the charge initially

*Please complete the bottom portion of this form to acknowledge the receipt of the charge and, where appropriate, to indicate whether the Agency will initially investigate the charge.*

Typed Name of EEOC or FEPA Official

**Dana Hutter**

Signature/Initials
*Dana R Hutter*

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Charge Detail Inquiry

| | | | |
|---|---|---|---|
| **CHARGE #** 570-2006-01313C | **FORMALIZED OFFICE** 570 | **UNIT** 1 **STAFF** Tram Ngo | |
| **LEAD CHARGE #** | **ACCOUNTABLE OFFICE** 570 | | |

| | |
|---|---|
| **DATE INITIAL INQUIRY** | 06/09/20 |
| **DATE FIRST OFFICE** | 06/09/20 |
| **DATE DISTRICT** | 06/09/20 |
| **THIS OFFICE DATE** | 06/09/20 |

**CHARGING PARTY INFORMATION**

Ibrahim, Bill

4207 Jennifer St., N.W.

Washington          DC     20015    **Country** USA

**Home** (202) 271-1222    **Work**

**SSN**                 **Date Of Birth**

**Sex**   M   **Race**          **Nat Origin**   N

**CONTACT**

                                **Country**

**Phone**

**Email Address**

---

**RESPONDENT INFORMATION**

UNISYS CORPORATION @ CAPITOL HILL

Washington          DC     20510    **Country** USA

**Phone**                 **FAX**

**R Type** E   **EEO #**      **EEO FUN**    **SMSA** 8840

**SIC Codes**

**CONTACT**

Mr. John Monaghan

UNISYS CORPORATION

Unisys Way

MS E8-114

Blue Bell          PA     19424    **Country** USA

**Phone** (215) 986-4011

**Email Address**

---

**PROCESSING INFORMATION**

| | | | |
|---|---|---|---|
| **Deferral Office** 10C | **Source Of Complaint** A | **Processing Type** O | **Processing Category** B |
| **Staff** John Woods | | **Staff Assigned Date** 06/22/2006 | **Staff Function/Unit** B1 |

**Last Action** 06/22/2006 5 G1 Assigned To Staff Office: 570 F/U: B1 Del:A

**Final Closure Action**

**Subpoena:**      **Suspense:**      **Transfer From:**

---

**ALLEGATIONS**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Alleg # 1 | **SBI:** T | **NO** H1 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |
| Alleg # 2 | **SBI:** T | **NO** T2 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 10/21/2005 | **Last DOV** 10/21/2005 |
| Alleg # 3 | **SBI:** T | **AM** T2 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 10/21/2005 | **Last DOV** 10/21/2005 |
| Alleg # 4 | **SBI:** T | **AM** H1 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |
| Alleg # 5 | **SBI:** T | **OR** C1 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 10/21/2005 | **Last DOV** 10/21/2005 |
| Alleg # 7 | **SBI:** T | **RB** H1 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |
| Alleg # 8 | **SBI:** T | **RB** T2 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |
| Alleg # 9 | **SBI:** T | **OC** H1 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |
| Alleg # 10 | **SBI:** T | **OC** T2 | **Cont Act?** | **Litigation?** | **Cause?** | **First DOV** 12/01/2003 | **Last DOV** 10/21/2005 |

---

**BENEFITS**

---

**ACTION HISTORY**

| Date | Seq | Code | Description | Attributes | Office | F/U | Del |
|---|---|---|---|---|---|---|---|
| 06/09/2006 | 1 | AB | Formalize Charge | | 570 | I1 | |
| 06/22/2006 | 2 | B6 | Assign Processing Category | 1:B | 570 | I1 | |
| 06/22/2006 | 3 | G8 | Pos. Statement Requested | | 570 | I1 | |
| 06/22/2006 | 4 | B4 | Send to Function/Unit | 1:B 2:1 3:P | 570 | I1 | |
| 06/22/2006 | 5 | G1 | Assigned To Staff | 1:JW 2:A | 570 | B1 | |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 570-2006-01313 |

**D.C. Office Of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Bill Ibrahim** | **(202) 271-1222** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **4207 Jennifer St., N.W., Washington, DC 20015** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UNISYS CORPORATION** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **@ CAPITOL HILL,  Washington, DC 20510** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☒ COLOR   ☐ SEX   ☒ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **12-01-2003** | **10-21-2005** |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

## *SEE ATTACHMENT*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

| Date | Charging Party Signature |
|---|---|
| | |

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**



| | |
|---|---|
| BILL IBRAHIM<br>4207 Jennifer Street NW<br>Washington, D.C. 20015 | *<br>*<br>*<br>*       Complaint No.<br>* |
| Complainant, | * |
| v. | |
| UNISYS CORPORATION<br>Blue Bell, Pennsylvania 19424 | *<br>*<br>* |
| Respondent. | * |

\*    \*    \*    \*    \*    \*    \*

## CHARGE OF DISCRIMINATION

1. The petitioner, Mr. Bill Ibrahim first became employed with the respondent
   company in September 2002 in the position of team leader in the corporate
   information systems department. Complainant, a Muslim, is originally from
   Somalia and became a citizen of this country in 1996. Respondent is a company
   whose corporate headquarters is in Blue Bell Pennsylvania and does business in
   the Washington metropolitan area, including the District of Columbia.

2. At all operative times, Paul Testa was a manager at Unisys and the complainant's
   direct supervisor while he was employed with the company. Complainant has
   worked in the computer field since 1986 and is certified in various programs,
   including but not limited to MCSE, MCSA, Rt and network plus. While
   employed with the respondent company, complainant was dispatched to service
   various clients of the respondent company throughout the metropolitan area.

1

3. After becoming employed by the respondent, complainant was subjected to a hostile work environment created and sustained by Mr. Testa. In July 2003, Mr. Testa informed the complainant that he was not going anywhere in the company. There was no basis for such an assertion by Mr. Testa other than his dislike for the complainant. In December 2003, Mr. Testa referred to the incident in Somalia in the early 1990's involving U.S. servicemen and further stated in complainant's presence that all Somalis should be hung.

4. In 2004, the complainant was demoted from his position as team leader without explanation or justification. Complainant was never promoted during the entire time that he was employed by the respondent. In November 2004, Mr. Testa recommended that the complainant be terminated from employment and again asserted that he was not going anywhere in the company. Mr. Testa had disdain for the complainant because he was originally from Somalia Africa, is Muslim and possesses dark skin.

5. Mr. Testa continued to maintain a hostile work environment for the complainant by routinely doing the following:

   a. Rejected time sheets submitted by complainant without justification;

   b. Rejected training vouchers submitted by the complainant and denied him the opportunity to receive training which would allow him to advance in his profession;

   c. Rejected expense vouchers submitted by the complainant again without justification and refused to pay the expenses incurred;

d.  Routinely denied requests for vacation made by the complainant again without justification;

e.  Refused to sign clearance sheets submitted by complainant again in doing so denied the complainant the opportunity to advance in the company;

f.  Routinely called the complainant names in the workplace such as nigger and boy.  He further stated that if the complainant contacted the Human Resources Department nothing would happen and at one point stated that if HR was called I will hang you.

No other similarly situated employees of the respondent company were treated in such a way as the complainant.

6.  Complainant's work environment became so hostile and intolerable that he did in fact contact the HR department in late 2004 and informed it of the manner in which Mr. Testa was treating him.  Complainant continued to communicate with HR at their offices in Norcross, Georgia throughout 2005 concerning the hostile work environment he was being subjected to, however, no corrective action was either recommended or taken by the respondent.  Ultimately realizing that the respondent did not intend to deal with the situation and the unlawful conduct continuing unabated, complainant resigned his position from the company on or about October 21, 2005.  In effect, complainant was constructively discharged from his position with respondent at that time.

## I. VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

7.  Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to discriminate against any individual with respect to his

3

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C. §2000(e).

8. Mr. Ibrahim was subjected to a hostile work environment, not promoted and was otherwise unlawfully harassed in the workplace due to his country of national origin, race, and /or religion in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. §2000(e).

9. Title VII was further violated in that the respondent company failed to investigate a legitimate complaint filed by the petitioner and failed to take any corrective action concerning the conduct complained of.

## II. VIOLATION OF DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

10. Mr. Ibrahim was subjected to a hostile work environment and was otherwise unlawfully harassed in the workplace due to his country of national origin, race and /or religion in violation of the District of Columbia Human Rights Act.

11. The D.C. Human Rights Act was violated in that the respondent company failed to investigate a legitimate complaint filed by the petitioner and failed to take any corrective action concerning the conduct in question.

## III. RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY

12. Mr. Ibrahim correctly complained about Mr. Testa's unlawful conduct, filed a complaint with the respondent company and sought corrective action from the respondent company. Rather than doing what is required under the law, respondent retaliated against the petitioner for engaging in protected activity and allowed the unlawful conduct to continue unabated.

## RELIEF SOUGHT

Assuming that the commission finds violations of the aforementioned laws by the respondent, petitioner seeks the following by way of remedies:

1. Compensatory and punitive damages and attorneys fees and costs as allowed under applicable law; and

2. Reimbursement for all overtime and expenses incurred by the complainant for which he was not properly paid;

3. All other relief the Commission deems appropriate.

Respectfully Submitted,

Bill Ibrahim
4207 Jennifer Street NW
Washington, D.C. 20015

Complainant

John E. Carpenter, Esquire
910 17th Street NW  Suite 800
Washington, D.C. 20006
(202) 887-5445

Attorney/Designated Representative
for the Petitioner

**EXHIBIT D**

Attachment 3

## FY 2006 EEOC/FEPA MODEL WORKSHARING AGREEMENT

WORKSHARING AGREEMENT
BETWEEN

**DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS**
(FEPA)

and

THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
(Name Of District Office)

FOR FISCAL YEAR 2006

I.  INTRODUCTION

    1.    The **D. C. Office of Human Rights,** hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of **One (1)** or more employees occurring within District of Columbia based on the bases of actual or perceived: race, color, sex, national origin, age, religion, marital status, personal appearance, sexual orientation, familiar status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence or business. Sexual harassment is a form of sex discrimination, which is also prohibited by the Act. In addition, harassment based on any of the above-protected categories is also prohibited by the Act, as appropriate,) pursuant to District of Columbia Human Rights Act, D. C. Family and Medical Leave Act and the Parental Leave Act.

        The U.S. Equal Employment Opportunity Commission, hereinafter referred to as the EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). The EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C.§ 621 et.seq.) (ADEA), for unequal wages based on sex under the Equal Pay Act of 1963, as amended (29 U.S.C.§ 206) (EPA), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101) (ADA).

    B.    In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the

EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate (indicate city, state, etc.) and Federal laws.

II. FILING OF CHARGES OF DISCRIMINATION

A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706 (c) and (e) (1) of Title VII. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this agreement or by other mutual agreement.

B. The FEPA shall take all charges alleging a violation of Title VII, the ADEA, the EPA, or the ADA where both the FEPA and the EEOC have mutual jurisdiction, or where the EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III. A. 1. below, refer them to the EEOC for initial processing.

C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner that will satisfy the requirements of both agencies to the extent of their common jurisdiction.

Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the FEPA within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES).

D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to the EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge. (If applicable state statute or local ordinance requires such disclosures, this sentence may be deleted.)

(More specific instructions depending on District Office/FEPA procedures should also be included here.)

E. Within ten calendar days of receipt, each Agency agrees that it will notify both the Charging Party and the Respondent of the

dual-filed nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes.

III. DIVISION OF INITIAL CHARGE-PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A.    The EEOC and the FEPA will process all Title VII, ADA, and ADEA charges that they originally receive.

    1.    For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

    In addition, the EEOC will initially process the following charges:

    -- All Title VII, ADA, and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

    -- All disability-based charges that may not be resolved by the FEPA in a manner consistent with the ADA.

    -- All concurrent Title VII/EPA charges;

    -- All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision-making process;

    -- All charges filed by EEOC Commissioners;

    -- Charges also covered by the Immigration Reform and Control Act;

    -- Complaints referred to the EEOC by the U.S. Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691.

    -- Any charge where the EEOC is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

May-03-06    07:58am    From-E E O C                    +2022756834        T-595    P 005/007    F-300

-- Any charge alleging retaliation for filing a charge with the EEOC or for cooperating with the EEOC; and

-- All charges against Respondents that are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

-- (Add additional provisions specific to District Office here)

2.    The FEPA will initially process the following types of charges:

-- Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

-- Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree that, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees that have features relevant to the disposition of subsequent charges;

-- All charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA Ordinance, or where the EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but the FEPA can process that charge.

-- All charges against Respondents that are designated for initial processing by the FEPA in a supplementary memorandum to this Agreement; and

-- All disability-based charges against Respondents over which the EEOC does not have jurisdiction.

(Add additional provisions specific to the FEPA here.)

B.    Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C.    Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within working days.

IV.  EXCHANGE OF INFORMATION

A.    Both the FEPA and the EEOC shall make available for inspection and copying to appropriate officials from the other Agency any

information that may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from the EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, the ADEA, and the ADA.

B.   In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

V.   RESOLUTION OF CHARGES

A.   Both agencies will adhere to the procedures set out in the EEOC's State and Local Handbook, including current revisions thereto.

B.   For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

1.   jurisdictional requirements,

2.   investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

3.   relief, if appropriate,

4.   mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

C.   In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles.

D.   For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

VI.   IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A.   Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be **Georgia A.**

**Stewart.** The liaison official for the EEOC will be (name of person).

B.    The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C.    The EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D.    If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Field Programs for resolution.

E.    This Agreement shall operate from the first day of October 2005 to the thirtieth day of September (in the year the contract ends) and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Date

9/23/05

WASHINGTON FIELD OFFICE
U.S. Equal Employment Opportunity Commission
(                    ) DIRECTOR
Dana Hutter

Date

Kenneth L. Saunders, Director

**DISTRICT OF COLUMBIA OFFICE OF HUMAN RIGHTS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BILL IBRAHIM,** | |
| **Plaintiff,** | |
| *v.* | **Case No. 1:07-CV-02295 RMC** |
| **UNISYS CORPORATION,** | |
| **Defendant.** | |

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of the Defendant Unisys Corporation's Motion to Dismiss; any opposition thereto; and the entire record herein, it is:

ORDERED, that Defendant Unisys Corporation's Motion to Dismiss is granted in its entirely; and it is further

ORDERED, that this case is dismissed in its entirety, with prejudice.

Dated: _____, 2008      _____
                                          United States District Judge

Copies to:

John E. Carpenter, Esq.
D.C. Bar No. 420756
910 17th Street, N.W. Suite 800
Washington, D.C. 20006

Counsel for Plaintiff

Frank C. Morris, Jr., Esq.
D.C. Bar No. 211482
Brian Steinbach, Esq.
D.C. Bar No. 256727
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, D.C. 20037-1175
(202) 861-0900

Attorneys for Defendant