UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| BILL IBRAHIM, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 07-2295 (RMC) |
| UNISYS CORPORATION, | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Bill Ibrahim worked for Unisys Corporation until his resignation in October 2005. He complains of a hostile work environment, discrimination and retaliation due to his country of national origin (Somalia), race and/or religion, and protected activity. Unisys moves to dismiss the entire complaint, as time-barred or for failure to state a claim. Mr. Ibrahim's claims under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*, will not be dismissed as time-barred because his timely filing of a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), which in turn cross-filed with the District of Columbia Office of Human Rights ("DCOHR"), tolled the one-year statute of limitations for filing a private cause of action under the DCHRA. The allegations under the DCHRA and the same allegations brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), also will not be dismissed, as the Complaint makes out viable claims sufficient to withstand a motion to dismiss.

I. BACKGROUND

Mr. Ibrahim is a Muslim from Somalia who is now a citizen of the United States.

Compl. ¶ 6 [Dkt. #1].[1] He started to work for Unisys in September 2002 and resigned on October 21, 2005. *Id.* ¶¶ 6, 18. At all times, his direct supervisor was Paul Testa, whom Mr. Ibrahim alleges "had disdain" for Mr. Ibrahim because he is from Somalia, is a Muslim, and possesses dark skin. *Id.* ¶¶ 8, 16. Mr. Ibrahim alleges that Mr. Testa "created and sustained" a hostile work environment. *Id.* ¶ 10. He asserts that this hostile work environment was demonstrated by Mr. Testa "routinely doing the following":

> a. Reject[ing] time sheets submitted by Mr. Ibrahim without justification [thus reducing his pay];
>
> b. Reject[ing] training vouchers submitted by Mr. Ibrahim and denying him the opportunity to receive training which would [have] allow[ed] him to advance in his profession;
>
> c. Reject[ing] expense vouchers submitted by Mr. Ibrahim again without justification[, which meant that Mr. Ibrahim was never reimbursed for many of the expenses he incurred while traveling as part of his work for Unisys];
>
> d. Routinely deny[ing] requests for vacation made by Mr. Ibrahim again without justification;
>
> e. Refus[ing] to sign [security] clearance sheets submitted by Mr. Ibrahim again in doing so den[ying] Ibrahim the opportunity to advance in the company; [and]
>
> f. Routinely call[ing] Mr. Ibrahim names in the workplace such as nigger and boy [and] . . . further stat[ing] that if Mr. Ibrahim contacted the Human Resources Department nothing would happen and at one point stated that if HR [were] called, ["]I will hang you.["]

*Id.* ¶ 17. No other similarly situated employees of Unisys were treated in such a way as Mr. Ibrahim. *Id.* More specifically, Mr. Ibrahim asserts that Mr. Testa told him, in July 2003, that he was not

---

[1] The facts are taken from the Complaint which, for purposes of its motion only, Unisys does not contest.

going anywhere in the company, *id.* ¶ 10; that in December 2003, Mr. Testa "referred to the incident in Somalia in the early 1990's involving U.S. servicemen and further stated in Mr. Ibrahim's presence that all Somalis should be hung," *id.* ¶ 11; and that Mr. Testa demoted Mr. Ibrahim from his position as a team leader in 2004 without explanation or justification, *id.* ¶ 12. Further, he alleges that he was not promoted in October 2004 or June 2005 due to his national origin, race or color, and that less qualified white candidates were selected instead. *Id.* ¶ 14. Mr. Ibrahim alleges that he first contacted the Unisys Human Resources Department ("HR") in late 2004 to complain about Mr. Testa, and spoke to them repeatedly in 2005, but no corrective action was taken. *Id.* ¶ 18

Mr. Ibrahim resigned from Unisys on October 21, 2005. *Id.* He alleges that his resignation was "in effect" a constructive discharge. *Id.* He filed a charge with the federal EEOC on June 9, 2006, alleging violations of both the DCHRA and Title VII. *See id.* ¶ 4; *see also* Mem. in Support of Def.'s Mot. to Dismiss ("Def.'s Mem."), Ex. 1 (Decl. of John P. Monaghan ("Monaghan Decl.") ¶ 3, Ex. A). At that time, the EEOC and the DCOHR had a worksharing agreement, pursuant to which a charge filed with one agency was considered filed with the other and was investigated by the agency with which it was initially filed. *See* Def.'s Mem., Ex. 2 (Decl. of Brian Steinbach ("Steinbach Decl.") ¶¶ 3, 5, Exs. B & D).[2] On June 22, 2006, the EEOC notified the DCOHR of Mr. Ibrahim's charge. Steinbach Decl. ¶¶ 3-4, Exs. B & C. Pursuant to the worksharing agreement, the DCOHR declined to assert jurisdiction over the complaint and instead deferred its jurisdiction to the EEOC to investigate. *Id.* ¶¶ 3-5, Exs. B-D.

The EEOC issued a right-to-sue letter to Mr. Ibrahim on September 25, 2007, stating

---

[2] The Court takes judicial notice of the D.C. worksharing agreement. *See Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 569 n.14 (D.C. 2007).

that, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statute." *See* Monaghan Decl., Ex. E.  Mr. Ibrahim filed suit on December 20, 2007.  *See* Compl.  Count I of the Complaint alleges that Mr. Ibrahim was subjected to a hostile work environment, not promoted, and otherwise harassed due to his country of national origin, race, and/or religion, in violation of Title VII.  Count II of the Complaint advances the same allegations, charging that they also violate the DCHRA.  In Count III, Mr. Ibrahim alleges that after he complained about Mr. Testa in late 2004, Unisys retaliated against him.  Unisys moves to dismiss, asserting that the Complaint is time-barred and that Mr. Ibrahim fails to state a claim.

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)), *aff'd*, *Al Odah v. United States*, 321 F.3d 1134 (D.C. Cir. 2003).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges

the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A sufficient complaint "contains a short and plain statement of the claim showing that the pleader is entitled to relief" enough "to give a defendant fair notice of the claims against him." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). In other words, "a complaint needs *some* information about the circumstances giving rise to the claims," *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008), and the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965.

For both a Rule 12(b)(1) and a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *see also Aktieselskabet*, 525 F.3d at 15, 17 (Under Rule 12(b)(6), a court must construe a complaint liberally in the plaintiff's favor, accepting all of the factual allegations in the complaint as true, "even if doubtful in fact.") (citing *Twombly*, 127 S. Ct. at 1965). Even so, for purposes of a Rule 12(b)(6) motion, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Aktieselskabet*, 525 F.3d at 16 n.4; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters

5

about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).  In deciding a 12(b)(1) motion, however, the Court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.  DISCUSSION

Unisys insists that the entire Complaint is time-barred and/or fails to state a claim. Its arguments are contradicted by recent precedents and therefore the motion to dismiss will be denied.

**A.  Claims Under DCHRA**

Unisys asserts that the filing of a charge with the EEOC, which in turn automatically files a cross-claim with the DCOHR pursuant to a worksharing agreement, does not toll the one-year statute of limitations for filing a claim under the DCHRA, and therefore Mr. Ibrahim's claims under the DCHRA in Counts II and III are time-barred.[3]  This argument was rejected by the District of Columbia Court of Appeals in *Esteños v. PAHO/WHO Federal Credit Union*, 952 A.2d 878 (D.C. 2008).  In *Esteños*, the plaintiff filed a charge with the EEOC within the one-year statute of limitations period required by the DCHRA, alleging that his employer discriminated against him

---

[3] Unisys argues that the expiration of the applicable one-year statute of limitations under the DCHRA requires dismissal for lack of subject-matter jurisdiction. *See* Def.'s Mem. at 1.  The Supreme Court has clarified that time prescriptions "are not properly typed 'jurisdictional.'" *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004).  "Clarity would be facilitated if courts and litigants used the label 'jurisdiction' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004).  Accordingly, the Court treats Defendant's argument that Mr. Ibrahim's DCHRA claims are time-barred as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) rather than as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See Leavell v. Kieffer*, 189 F.3d 492, 494-95 (7th Cir. 1999).

based on national origin in violation of the DCHRA.  *Id.* at 884.  Like Mr. Ibrahim, Mr. Esteños did not receive a right-to-sue letter from the EEOC until after the one-year statutory period had expired.  *Id.* at 885.  The defendants moved to dismiss the action as time-barred.  *Id.*  The D.C. Court of Appeals denied the motion to dismiss, holding that the timely filing of a charge with the EEOC, which in turn cross-files with the DCOHR pursuant to the worksharing agreement, tolls the statute of limitations for filing a private cause of action under the DCHRA until the EEOC relinquishes jurisdiction over the matter.  *Id.* at 880.

In this case, Mr. Ibrahim resigned from his position at Unisys on October 21, 2005.  He filed his charge with the EEOC on June 9, 2006.  Pursuant to the worksharing agreement between the EEOC and the DCOHR, the EEOC cross-filed Mr. Ibrahim's charge with the DCOHR on June 22, 2006 which tolled the statute of limitations under the DCHRA.  The EEOC issued its right-to-sue letter on September 25, 2007, and Mr. Ibrahim filed his Complaint on December 20, 2007.  Thus, excluding the time that was tolled while Mr. Ibrahim's charge was pending before the EEOC, approximately 11 months had elapsed between Mr. Ibrahim's resignation from Unisys and the filing of his Complaint in this Court.  Mr. Ibrahim therefore filed his Complaint under the DCHRA within the one-year statute of limitations, and his claims are not time-barred.

Unisys alternatively argues that this Court lacks jurisdiction over Mr. Ibrahim's DCHRA claims under the election of remedies doctrine.  "The DCHRA's election of remedies provision states that a person seeking relief must choose between filing a complaint with the [DC]OHR and filing a complaint in court."  *Griffin*, 925 A.2d at 572.  Put another way, the DCOHR "provide[s] a choice of remedies – an administrative proceeding or a judicial determination, but not both."  *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1313 (D.C. 1981).  The DCHRA recognizes two

exception to the election of remedies doctrine: "[1] where the [DCOHR] "has dismissed [a] complaint on the grounds of administrative convenience, or [2] where the complainant has withdrawn a complaint." D.C. Code § 2-1403.04(a) (2001). Recognizing these exceptions, Unisys nevertheless argues that because "Plaintiff never withdrew his complaint [from the EEOC or DCOHR], and the EEOC never administratively dismissed it before it reached its no probable cause determination, this Court lacks jurisdiction over his claims, and they therefore should be dismissed under the election of remedies doctrine." Def.'s Mem. at 12. The D.C. Court of Appeals also has rejected this argument.

In *Griffin v. Acacia Life Ins. Co.*, as in the present case, an employee brought a charge with the EEOC which in turn filed a cross-claim with the DCOHR pursuant to the worksharing agreement. 925 A.2d at 567, 569. The EEOC dismissed the charge because "it would 'not be able to prove'" the allegations of discrimination. *Id.* at 567. The EEOC then sent the plaintiff a right-to-sue letter. *Id.* After a series of proceedings before the U.S. District Court for the District of Columbia which dismissed the federal Title VII claims and declined to exercise supplemental jurisdiction over the DCHRA claims, the plaintiff initiated a suit solely under the DCHRA in the Superior Court for the District of Columbia. *Id.* at 571. The Superior Court dismissed the plaintiff's retaliation claim under the DCHRA, ruling that because the EEOC had cross-filed her claim with the DCOHR, the plaintiff had elected an administrative remedy, and therefore was barred by the doctrine of election of remedies from pursuing her DCHRA claim in court. *Id.* at 572. On appeal, the plaintiff argued that pursuant to the worksharing agreement between the EEOC and the DCOHR, even if she had pursued an administrative remedy, the DCOHR dismissed her complaint "for administrative convenience." *Id.* at 573. The D.C. Court of Appeals agreed, holding that "when the

[DC]OHR invokes the automatic termination provision of the worksharing agreement for complaints filed originally with the EEOC, that ruling constitutes a dismissal on the ground of administrative convenience under the statute, leaving the complainant free to pursue her cause of action in . . . [c]ourt." *Id.* at 574. The fact that the EEOC decided the charge on the merits was of no consequence. *See id.* (reasoning that even though the EEOC disposed of the plaintiff's claims on the merits, "were we to refuse to characterize the termination of appellant's complaint [with the DCOHR as a dismissal on the grounds of administrative convenience], the effect would be to deny her any forum in which to pursue her retaliation claim").

In the present case, as in *Griffin*, Mr. Ibrahim filed a charge with the EEOC which automatically filed a cross-claim with the DCOHR. Pursuant to the worksharing agreement, the DCOHR declined to assert jurisdiction over the complaint, instead deferring its jurisdiction to the EEOC to investigate. As the D.C. Court of Appeals stated in *Griffin*, the deferral of jurisdiction by the DCOHR amounted to a dismissal of Mr. Ibrahim's complaint "'on the grounds of administrative convenience.'" 925 A.2d at 573 (quoting D.C. Code § 1-2556(a) (2001)). After reviewing the record, the EEOC issued a determination that "based upon its investigation, the EEOC is unable to conclude that the information obtained establishes a violation of the statutes," Monaghan Decl., Ex. E, and shortly thereafter, issued a right-to-sue letter to Mr. Ibrahim.[4] Mr. Ibrahim subsequently filed a complaint in this Court. Because the DCOHR dismissed Mr. Ibrahim's complaint on the grounds of administrative convenience, the election of remedies doctrine does not bar him from filing his

---

[4] Because the D.C. Court of Appeals in *Griffin* did not consider the EEOC's disposition on the merits to be relevant to the question of whether the plaintiff elected an administrative remedy with the DCOHR in lieu of a judicial remedy under the DCHRA, *see* 925 A.2d at 573-74, the Court need not address whether the EEOC's disposition notice in this case was a disposition on the merits.

9

DCHRA claim here. Unisys's motion to dismiss Mr. Ibrahim's DCHRA claims therefore must be denied.

### B. Title VII Claims

Unisys next argues that Mr. Ibrahim's Title VII claims in Count I are barred due to his failure to file a timely charge or for failure to state a claim. The Court rejects both arguments. First, for the purpose of deciding the motion to dismiss, the Court accepts as true the allegations in the complaint that "the unlawful conduct [was] continuing unabated" until Mr. Ibrahim resigned from the company on October 21, 2005. *See* Compl. ¶ 18. Thus, accepting the allegations in the complaint as true, *see Aktieselskabet*, 525 F.3d at 15, the hostile work environment endured until the date that Mr. Ibrahim resigned. Accordingly, Mr. Ibrahim did not run afoul the 300-day limit for filing a charge with the EEOC.

With respect to Unisys's argument that the complaint fails to state a claim, its reliance on *Twombly* is misplaced. Although "many courts have disagreed about the import of *Twombly*," the D.C. Circuit has interpreted *Twombly* to "leave the long-standing fundamentals of notice pleading intact." *Id.* Under Rule 8 of the Federal Rules of Civil Procedure, "a sufficient complaint 'contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief,' enough to give a defendant 'fair notice of the claims against him.'" *Id.* (quoting *Ciralsky*, 355 F.3d at 668-70) (alteration in original). "'[S]pecific facts are not necessary,' and a complaint need only give the defendant fair notice of the claims." *Aktieselskabet*, 525 F.3d at 16 (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)) (alteration in original). The complaint in this case makes out a sufficient set of allegations to put Unisys on notice of Mr. Ibrahim's claims. It therefore satisfies the requirements of Rule 8.

### C. Retaliation Claims

Finally, Unisys argues that Mr. Ibrahim's retaliation claims in Count III also must be dismissed for failure to state a claim.[5]  It asserts that "a claim of retaliation requires an *adverse personnel action*," and Mr. Ibrahim has failed to allege such an action.  Def.'s Mem. at 19.  In *Burlington N. & Santa Fe Ry. v. White*, however, the Supreme Court expressly rejected the notion that a retaliation claim must allege an "adverse employment action":

> The scope of the antirelation provision extends beyond . . . employment-related retaliatory acts and harm.  We therefore reject the standards applied in the Courts of Appeals that have . . . limited actionable retaliation to so-called "ultimate employment decisions."

548 U.S. 53, 67 (2006).  Rather, in order to establish a retaliation a claim under Title VII, the plaintiff need only show that "a reasonable employee would have found the challenged [retaliatory] action materially adverse."  *Id.* at 68.

Here, Mr. Ibrahim alleges that he reported Mr. Testa's discriminatory conduct to the HR department and filed a proper complaint with Unisys, but the company took no corrective action.  *See* Compl. ¶¶ 18, 24.  He further alleges that "[r]ather than doing what is required under the law, Unisys retaliated against Mr. Ibrahim for engaging in protected activity and allowed the unlawful conduct to continue unabated."  *Id.* ¶ 24.  Essentially, Mr. Ibrahim asserts that the retaliation against him came in the form of continued discriminatory and harassing behavior even after he reported that behavior to HR.  That allegation, in connection with the general description and specific examples of discrimination and harassment that preceded the alleged retaliation, is sufficient to withstand a motion to dismiss.

---

[5] Unisys's contention that the retaliation claims brought under Title VII and the DCHRA must be dismissed as time-barred is rejected for the reasons provided in Sections A and B above.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Unisys Corporation's Motion to Dismiss [Dkt. # 9] will be denied.  A memorializing order accompanies this Memorandum Opinion.


Date: October 27, 2008                                                                 /s/
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge